Linda ALCALA, Individually and on behalf of all other persons similarly situated, Plaintiff,

v.

Kevin J. BURNS, Individually and in his capacity as Acting Commissioner of the State of Iowa Department of Social Services; and Michael Ryan, Individually and in his capacity as Director of the Scott County Department of Social Services, Defendants.

Jane DOE and Joan Roe, Plaintiffs,

v.

Kevin J. BURNS, Individually and in his capacity as Acting Commissioner of the State of Iowa Department of Social Services; and Michael Ryan, individually and in his capacity as Director of the Scott County Department of Social Services, Defendants.

Civ. Nos. 73-86-2, 73-110-2.

United States District Court, S. D. Iowa, C. D.

July 31, 1973. Stay Granted Oct. 9, 1973. See 94 S.Ct. 26.

Robert D. Bartels, Iowa City, Iowa for plaintiffs.

Lorna L. Williams, Sp. Asst. Atty. Gen., and Larry Munsinger, Asst. Atty. Gen., Des Moines, Iowa, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT.

HANSON, Chief Judge.

In these consolidated causes of action, brought pursuant to Title 42 U.S.C. Section 1983, the plaintiffs ask this Court to declare invalid, and enjoin defendants from continuing, acts by which defendants deny A.F.D.C. assistance to pregnant mothers and their unborn children. Defendants have denied A.F.D.C. assistance to these plaintiffs pursuant to their interpretation of an Iowa Department of Social Services regulation, such interpretation being that A.F.D.C. assistance is not available to otherwise eligible pregnant women whose children have not been born. The defendants claim that neither the Federal statutes governing A.F.D.C. nor the Iowa Regulations contemplate A.F.D.C. payments for an unborn child.

On April 4, 1973, this Court entered a temporary restraining order enjoining the defendants from denying A.F.D.C. payments to Linda Alcala on the sole basis that her child was not yet born. On May 16, 1973, a similar action was filed by plaintiffs Jane Doe and Joan Roe. This cause of action was consolidated with Alcala v. Gillman and a temporary

restraining order was issued restraining the defendants from denying A.F.D.C. payments to these plaintiffs on the sole basis that their children are not yet born.

On May 29, 1973, a trial was held to determine the issues in the above two causes of action. The following will constitute the Findings of Fact, Conclusions of Law, and Order for Judgment.

Jurisdiction of the Court is invoked pursuant to Title 42 U.S.C. Section 1983, Title 28 U.S.C. Section 2201, and Title 28 U.S.C. Section 1343.

## FINDINGS OF FACT

1. The plaintiffs are unmarried pregnant women with unborn children, are currently unemployed, and have no savings.

2. The plaintiffs applied to the Scott County Department of Social Services for A.F.D.C. assistance, but were denied such assistance because of the Scott County Department's interpretation of Section V, Chapter 5 of the Iowa Department of Social Services Manual. As interpreted by the defendants, this provision does not provide for A.F.D.C. assistance to an otherwise eligible pregnant woman whose child is not yet born.

3. The plaintiffs met all eligibility requirements for A.F.D.C. assistance except that their children were not yet born.

4. Stipulated testimony of Dr. Roy M. Pitkin, obstetrician and gynecologist, (Plaintiffs' Exhibit 2) stated that the nutrition of a mother during pregnancy is an important determinant of the health and condition of the child and that there is a substantial likelihood that the health of a child may be adversely affected as a result of the pregnant mother's inadequate nutrition. He also stated that proper medical attention during pregnancy is important to protect the mother's health, which in turn affects the health and development of the child.

5. The defendants in this cause of action are Kevin J. Burns, Acting Director of the State of Iowa Department of Social Services, and Michael Ryan, Director of the Scott County Department of Social Services.

6. The Court finds that this is an appropriate class action under Rule 23 of the Federal Rules of Civil Procedure.

## CONCLUSIONS OF LAW

The plaintiffs assert their right to A.F.D.C. payments on three theories. First, they allege that the defendants' interpretation of Iowa's A.F.D.C. provisions, which deny payments to otherwise eligible pregnant women whose children have not been born, conflicts with eligibility provisions of Title 42 U.S.C. Section 606(a), and thus is invalid and unconstitutional under the Supremacy Clause. The second two theories allege that the actions of the defendants in denying A.F.D.C. payments and their interpretation of Title 42 U.S.C. Section 606(a), and the Employees Manual violate the plaintiffs' right to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution. Because of the Court's holding upon the Supremacy Clause theory, it will not be necessary to reach the "equal protection" and "due process" arguments.

The Supremacy Clause Argument.

The plaintiffs claim that the term "dependent child" as defined in Section 406(a) of the Social Security Act, Title 42 U.S.C. Section 606(a) [1] encompasses an unborn child for purposes of determining eligibility for A.F.D.C. payments. They further argue that since a mother with an unborn child is

1. This Section provides "(a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from home, or physical or mental incapacity of a parent, and who is living with his father, mother . . . and (2) who is (A) under the age of eighteen. . . ."

eligible under the Federal statute, the states cannot pursue more restrictive eligibility requirements lest they be in violation of the Supremacy Clause.

The law concerning eligibility requirements for A.F.D.C. has been dealt with by a long line of recent Supreme Court decisions. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Several propositions relevant to these causes of action become clear from the law stated in these opinions. King v. Smith, *supra*, in interpreting the effect of Section 402(a) of the Social Security Act, Title 42 U.S.C. Section 602(a),[2] held that the Social Security Act determined eligibility standards for A.F.D.C. and that state provisions which had the effect of *narrowing those eligibility standards* were to that extent invalid because of the Supremacy Clause.

Townsend v. Swank, *supra*, 404 U.S. at 286, 92 S.Ct. at 505, in interpreting the dictates of King v. Smith stated:

"Thus King v. Smith established that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance, under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.

We recognize that HEW regulations seem to imply that States may to some extent vary eligibility requirements from federal standards. However, the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of Section 402(a)(10) that aid be furnished 'to *all eligible individuals*.' "

Carleson v. Remillard again reiterated the same proposition as the aforementioned cases in invalidating a California regulation which denied A.F.D.C. payments to otherwise eligible individuals on the basis that absence from home for military service did not constitute "absence from home" for purposes of satisfying A.F.D.C. eligibility requirements.

From *King, Townsend,* and *Remillard,* the following related principles have been set forth by the Supreme Court:

(1) The states may not impose more restrictive eligibility conditions for receiving A.F.D.C. than those set out in the Social Security Act;

(2) In order to exclude an applicant who would have been covered under the Social Security Act, the state must rely upon legislative history or statutory language "clearly evidencing" Congressional intent to allow the exclusion of the applicant;

(3) HEW regulations purporting to make eligibility for certain groups of applicants optional with the states are of no effect in the absence of Congressional intent to allow such exclusions.

Since there appears to be no convincing argument by the defendants that there is a specific Congressional exclusion or intent to allow the exclusion of unborn children and the Court can find no such intent, the Court's inquiry must

2. This section provides that: "A State plan for aid and services to needy families with children must . . . (10) provide, effective July 1, 1951, that all individuals wishing to make application for aid to families with dependent chil-

dren shall have opportunity to do so, and that aid to families with dependent children shall be furnished with reasonable promptness *to all eligible individuals.* . . . · (Emphasis added)

be directed to whether the term "dependent child" in Title 42 U.S.C. Section 606(a) *includes* coverage for the "unborn child." If such coverage is in fact intended by the Social Security Act, the Court would be compelled under the precedents cited above to find for the plaintiffs.

The plaintiffs argue that the Social Security Act contemplates coverage for the "unborn child" when it provides coverage for a "dependent child." It is first contended that the plain language of the statute implies they are to be included and that there is no indication in the statutory language that mothers with unborn children are to be excluded from coverage. They point to the definition by Webster's New International Dictionary (Second Edition Unabridged) which defines "child" as: "An unborn or recently born human being; fetus; infant; baby. . . ." The defendants argue just as ardently that the clear language of the Social Security Act constantly refers to children in being and that nowhere is "unborn child" referred to. The defendants argue that the customary meaning of the word "child" is that of a born person.

In any event, the Court does not find this venture into the plain meaning of the term "dependent child" extremely fruitful. It is obvious that the "plain language" of the statute is not as plain as both parties contend and is surely not conclusive for the plaintiffs or the defendants. It is ascertainable, however, that an "unborn child" is not specifically excluded by the language of the Act.

Given this ambiguity in the statute, the Congressional intent becomes more important and is a more fruitful inquiry. Title 42 U.S.C. Section 601 authorizes funds:

"For the purpose of encouraging the care of dependent children in their homes . . . by enabling each state to furnish financial assistance and rehabilitation and other services,

as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents . . . to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of *continuing parental care and protection.* . . ." (Emphasis added).

Inclusion of the "unborn child" is consistent with the purposes of the Act above stated. The stipulated testimony of Dr. Roy Pitkin clearly states the additional needs of the child and mother during this prenatal period and the serious consequences that flow to the family if the nutritional and medical needs of the child are not met during this prenatal period. Meeting of these family needs is consistent with the purposes of the A.F.D.C. program stated above. As stated in Carleson v. Remillard, *supra,* 406 U.S. at 604, 92 S.Ct. at 1936:

"We cannot assume here, anymore than we could in King v. Smith, *supra,* that while Congress 'intended to provide programs for the economic security and protection of *all* children,' it also 'intended arbitrarily to leave one class of destitute children entirely without meaningful protection.' 392 U.S., at 330, 88 S.Ct., at 2140."

The term "dependent child" is broad enough to encompass an "unborn child" and the coverage for "unborn children" is consistent with the purposes of the Social Security Act. No credible argument can be made that Congress intended to exclude "unborn children" from coverage under this Act. Therefore the Court concludes that coverage for "unborn children" is contemplated by the Social Security Act.

This conclusion is strengthened by a reading of the relevant regulations of the Department of Health, Education and Welfare. The Code of Federal Reg-

ulations, 45 C.F.R., Section 233.90 provides that:

"(c)(2) Federal financial participation is available in:

. . .

(ii) Payments with respect to an unborn child when the fact of pregnancy has been determined by medical diagnosis. . . ."

Since 1946 it has been the policy of HEW that payments are authorized on behalf of "unborn children." The position of HEW, as stated in their amicus brief filed by the defendants, is that Section 233.90(c)(2) is an optional program to the states and that just because these regulations *allow* coverage of unborn children does not dictate that coverage is required.

■ If, however, this so-called optional program of HEW is a valid program, the power to promulgate this Regulation would flow from the Social Security Act. As stated in the defendants' Brief on page 7:

"However, it is equally clear that such regulations may not go beyond the limits of the Act or law on which such regulations are based. Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971)."

The fact that HEW has allowed payments to "unborn children" since 1946 under this Act and the fact that Congress has acquiesced in this position is a most convincing argument that the Social Security Act encompasses eligibility for the parent with an "unborn child." The Court again concludes that "unborn children" are eligible for A.F.D.C. benefits under the Social Security Act and that under the precedents of *King*, *Townsend* and *Remillard* and the Eighth Circuit cases of Rosen v. Hursh, 464 F. 2d 731 (8 Cir. 1972) and Doe v. Gillman, 479 F.2d 646, No. 72-1605 (8th Cir., 1973), the defendants cannot enforce more strict eligibility requirements than those requirements in the Federal statute.

Lower Court Opinions Considering the Same Question Presented to this Court.

There are two United States District Court cases reaching conflicting decisions in which the issue was whether a state regulation denying A.F.D.C. assistance to pregnant women and their unborn children solely on the basis that the children are unborn is inconsistent with the Social Security Act and therefore invalid under the Supremacy Clause. Parks v. Harden, 354 F.Supp. 620 (N.D. Ga., 1973) denied A.F.D.C. payments to the plaintiff. Wilson v. Weaver, No. 72-C-1960 (N.D.Ill., Dec. 26, 1972) (Order on preliminary injunction) found on the basis of the Supremacy Clause that the plaintiff in that cause of action was entitled to receive A.F.D.C. payments even though the child was not yet born.

The determining factor in the differing results that were reached is that Judge Smith in Parks v. Harden, when he searched the statute and legislative history, was looking for a very specific inclusion of "unborn children" which he did not find. Therefore he concluded that unborn children were not covered. This Court believes the proper approach is to look at the term "dependent child" and see whether it could be broad enough to include coverage for the "unborn child" in light of the overall purpose of the Act. This Court concludes, as did Wilson v. Weaver, that the term "dependent child" is broad enough to encompass an "unborn child" and that an interpretation of the Federal eligibility requirements which includes coverage for "unborn children" is consistent with, and in furtherance of, the overall purpose of the A.F.D.C. provisions of the Social Security Act.

Parks v. Harden also accepted HEW's position that the "unborn children" program under their regulation, Title 45 C. F.R., Section 233.90(c)(2)(ii), is optional even given the language of *King*, *Townsend* and *Remillard*. The *Parks* opinion did not explain from where the

authority for a so-called optional program was derived if such coverage was not contemplated by the Social Security Act. The Wilson v. Weaver court found that the HEW regulation supported the proposition that coverage for "unborn children" was contemplated by the Social Security Act and correctly concluded under the *King, Townsend* and *Remillard* cases that these federal eligibility standards can not be restricted by a State under the guise that the program is optional.

The Court now directs its attention to an unpersuasive but intriguing argument that asserting that an "unborn child" is a "dependent child" within the meaning of the Social Security Act is in total conflict with the abortion case, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) which held that an "unborn child" is not a person within the protection of the Fourteenth Amendment. In this lawsuit the Court is determining whether Congress intended to provide for a mother and her "unborn child" under the A.F.D.C. provisions. The fact that a child is not protected as a person under the United States Constitution is not relevant to the above inquiry. The payments are made to the family and not the "unborn child" and the mother is asserting her right to payments.

### The Abstention Argument.

■ The defendants argue that this Court should stay its hand pending the determination of these issues by the Iowa Court. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Department of Social Services of Iowa v. Dimery, 398 U.S. 322, 90 S.Ct. 1871, 26 L.Ed.2d 265 (1970) and Bascom and Hightower v. Perry, D.C., 357 F.Supp. 431, are cited as authority for this proposition. In this case, however, we are determining the applicability of federal law. There is no determination of a State law involved. Abstention is not appropriate in these circumstances.

### ORDER FOR JUDGMENT

■ The final matter for this Court to determine is the relief to be granted to the plaintiffs and their class. The Court will grant the declaratory and injunctive relief prayed for, but will not allow the claims for retroactive payments wrongfully withheld. In Doe v. Gillman, 479 F.2d 646, No. 72–1605 (8th Cir., 1973), the Eighth Circuit refused to grant retroactive payments in circumstances involving wrongfully withheld A.F.D.C. payments on the basis that Section 53.16(217) of the 1973 Iowa Departmental Rules provided for retroactive payments and was thus the process that should be taken by the aggrieved plaintiffs.

> "When the hearing decision is favorable to the claimant, or when the agency decides in favor of a claimant prior to the hearing, corrective payments, retroactive to the date of incorrect action, *shall* be made." (Emphasis added).

Once the rights of these parties have been determined, this Court cannot presume that the Iowa officials will not follow their own designated procedure for awarding relief.

It is ordered that the above shall constitute the Findings of Fact, Conclusions of Law and Order for Judgment in the above entitled cause of action.