**Linda ALCALA et al., Plaintiffs,**

**v.**

**Kevin J. BURNS, Individually and in his capacity as Commissioner of the State of Iowa Department of Social Services, and Michael Ryan, Individually and in his capacity as Director of the Scott County Department of Social Services, Defendants.**

**Civ. Nos. 73–86–2 and 73–110–2.**

United States District Court, S. D. Iowa, C. D.

March 8, 1976.

Robert D. Bartels and Barry Matsumoto, Iowa City, Iowa, and Michael W. Liebbe, Supervising Atty., H.E.L.P. Legal Assistance, Davenport, Iowa, for plaintiffs.

Richard C. Turner, Atty. Gen., State of Iowa, and Lorna Lawhead Williams, Sp. Asst. Atty. Gen., Des Moines, Iowa, for defendants.

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

HANSON, Chief Judge.

These consolidated causes of action challenge the constitutionality of defendants' interpretation of an Iowa Department of Social Services regulation. The case is before the Court on crossmotions for summary judgment.

Historically, this case has had an eventful life. Plaintiffs brought suit pursuant to 42 U.S.C. § 1983 (1970) seeking declaratory and injunctive relief against the defendants' action in denying Aid to Families with Dependent Children (A.F.D.C.)[1] benefits to plaintiffs. The defendants contended the benefits were denied because plaintiffs and the class they represent do not have a child or children in being, but rather are pregnant and seek A.F.D.C. benefits for their unborn children. The defendants interpreted the applicable state and federal provisions as not including "unborn children" within the meaning of "dependent children." *See* 42 U.S.C. § 606(a) (1970); Iowa Code § 239.1(3) (1975). On July 31, 1973, the Court held that the term "dependent child" included an unborn child for purposes of determining A.F.D.C. eligibility. *Alcala v. Burns*, 362 F.Supp. 180 (S.D.Iowa 1973). The Eighth Circuit Court of Appeals agreed with the Court's analysis and affirmed the holding. *Alcala v. Burns*, 494 F.2d 743 (1974). The United States Supreme Court, however, reversed holding that "the statutory term 'dependent child' does not include unborn children . . .," and remanded the case for consideration of the constitutional issues. *Burns v. Alcala*, 420 U.S. 575, 578, 587, 95 S.Ct. 1180, 1183, 1187, 43 L.Ed.2d 469, 474, 479 (1975). The Eighth Circuit remanded the case to this Court. *Alcala v. Burns*, 514 F.2d 1002 (1975).

Following remand to this Court, the plaintiffs amended their complaint to withdraw the request for injunctive relief. This, of course, obviates any need for empanelling a three-judge court pur-

---

1. 42 U.S.C. § 601 *et seq.* (1970); Iowa Code ch. 239 (1975).

suant to 28 U.S.C. §§ 2281, 2283 (1970) to consider the constitutional claims.

Jurisdiction remains vested in this Court pursuant to 28 U.S.C. Section 2201 and Section 1343 (1970).

## I. STANDING TO SUE

As a threshold matter, the defendants contend the plaintiffs lack standing to assert their claim for declaratory relief. Defendants read *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) to foreclose plaintiffs' right to sue because, in *Roe*, the Supreme Court held, *inter alia*, that an unborn child or fetus is not a "person" within the Fourteenth Amendment. *Id.* at 159, 93 S.Ct. at 729, 35 L.Ed.2d at 180[2].

■■■ However, A.F.D.C. benefits, as the name implies, are intended for use by entire family, including, of course, the mother of the dependent child. *See Burns v. Alcala*, 420 U.S. 575, 581 n. 6, 95 S.Ct. 1180, 1185, 43 L.Ed.2d 469, 475 (1975); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *see generally* Note, *Eligibility of the Unborn for A.F.D.C. Benefits: The Statutory And Constitutional Issues*, 54 B.U.L. Rev. 945, 966–67 (1974). In the present lawsuit, the plaintiffs are asserting their entitlement to benefits, not the right of their unborn children to benefits. *Alcala v. Burns*, 362 F.Supp. 180, 186 (S.D.Iowa 1973); *see also Parks v. Harden*, 504 F.2d 861 (5th Cir. 1974).

The Court therefore finds that the plaintiffs have a sufficient personal stake in this lawsuit to assert their constitutional claims.

## II. DUE PROCESS OF LAW AND THE IRREBUTTABLE PRESUMPTION DOCTRINE

■■■ Plaintiffs contend that defendants' interpretation creates a distinction, for eligibility purposes, between needy pregnant women without other children, needy pregnant women with other children, and needy non-pregnant women with children.[3] Plaintiffs claim the distinction creates classes and that the effectuation of the class scheme violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The first class, which is comprised of needy pregnant women with no other children in being, includes the plaintiffs who are not eligible for A.F.D.C. cash benefits or pregnancy-related medical assistance. Members of the second class, comprised of needy pregnant women with children in being, are eligible for cash benefits for themselves and their existing children and for pregnancy-related medical assistance. They are not, however, eligible for incremental cash benefits for their unborn children. Finally, the third class is comprised of non-pregnant mothers eligible for cash and medical benefits for themselves and all their children.

Plaintiffs claim the defendants' classification scheme, in effect, presumes plaintiffs' non-indigency solely because their children are *in utero* rather than in being. This conclusive presumption, plaintiffs conclude, when juxtaposed to the remedial purposes of the A.F.D.C. program, violates their due process rights because they are not provided an

---

**2.** It has also been held that a fetus or unborn child is not a "citizen" for purposes of protection under Section 1983. *McGarvey v. Magee-Women's Hospital*, 340 F.Supp. 751 (W.D.Pa. 1972), *aff'd*, 474 F.2d 1339 (3d Cir. 1973). However, due to the Court's finding that plaintiffs have standing to assert their constitutional claims, the issue of coverage under Section 1983 for plaintiffs' unborn children is immaterial.

**3.** The parties have agreed that the plaintiffs are otherwise eligible for A.F.D.C. cash and medical benefits on the basis of need or indigency, but are excluded from eligibility solely on the basis of defendants' interpretation of Iowa Code § 239.1(3) (1975) and the regulations promulgated thereunder. *See Burns v. Alcala*, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975).

opportunity to rebut the presumption and show entitlement to benefits.

In recent years the United States Supreme Court has expressed concern for legislative and administrative utilization of permanent irrebuttable presumptions which are often factually erroneous, and which do not provide the disadvantaged person with an opportunity to disprove the assumption. *See Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *United States Dep't of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), and *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). *See generally* Bezanson, *Some Thoughts On The Emerging Irrebuttable Presumption Doctrine*, 7 Ind.L.Rev. 644 (1974); Note, *The Irrebuttable Presumption Doctrine In The Supreme Court*, 87 Harv.L.Rev. 1534 (1974) [hereinafter cited as Note, *The Irrebuttable Presumption Doctrine*]. In response, the Court fashioned a doctrinal approach focalized on whether, in light of the articulated policy considerations of the regulation or statute in question, individuals disadvantaged by a classification scheme caused by the regulation or statute have, with respect to the statutory purpose, been properly classified.

Note, *The Irrebuttable Presumption Doctrine, supra,* at 1547. Where the classification created a conclusive presumption "often contrary to fact," the Court held that the affected individual must be afforded an opportunity to rebut the presumption. *See United States Dep't of Agriculture v. Murry, supra,* 413 U.S. at 514, 93 S.Ct. at 2835, 37 L.Ed.2d at 773.

However, in its most recent pronouncement, the Court, in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), eschewed its prior cases involving the irrebuttable presumption doctrine,[4] and held that, in social welfare eligibility cases, the proper constitutional analysis is traditional equal protection methodology.[5]

Based upon the Supreme Court's dispositive holding in *Weinberger v. Salfi, supra,* the Court concludes that defendants' interpretation of their regulations is not invalid because lacking the Due Process requisites embodied in the Fifth and Fourteenth Amendments to the United States Constitution.

### III. EQUAL PROTECTION

Plaintiffs alternatively contend the defendants' interpretation denies them equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

---

**4.** In *Salfi*, a Social Security benefits eligibility case, the Court distinguished its previous pronouncements by holding:

> that these cases are not controlling on the issue before us now. Unlike the claims involved in *Stanley* and *LaFleur*, a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status, *Dandridge v. Williams, supra,* though of course Congress may not invidiously discriminate among such claimants on the basis of a "bare congressional desire to harm a politically unpopular group," *U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2821, 2826, 37 L.Ed.2d 782 (1973), or on the basis of criteria which bear no rational relation to a legitimate goal. *Jimenez v. Weinberger*, 417 U.S. 628, 636, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363 (1974); *U. S. Dept. of Agriculture v. Murry*, 413 U.S. 508, 513–514, 93 S.Ct. 2832, 2835, 37 L.Ed.2d 767 (1973). Unlike the statutory scheme in *Vlandis*, 412 U.S., at 449, 93 S.Ct., at 2235, the Social Security Act does not purport to

> speak in terms of the bona fides of the parties to a marriage, but then make plainly relevant evidence of such bona fides inadmissible. As in *Starns v. Malkerson*, 326 F.Supp. 234 (Minn.1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the benefits here are available upon compliance with an objective criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives to be used as the test for eligibility. Like the plaintiffs in *Starns*, appellees are completely free to present evidence that they meet the specified requirements; failing in this effort, their only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test. 422 U.S. at 771–72, 95 S.Ct. at 2470, 45 L.Ed.2d at 542.

**5.** 422 U.S. at 768–70, 95 S.Ct. at 2468–69, 45 L.Ed.2d at 540–42. *See* p. 1028 *infra.*

█ Plaintiffs initially claim that the defendants' actions have interfered with plaintiffs right to have children, and, conversely, to terminate pregnancies at will. Therefore, plaintiffs contend, their "fundamental rights" to procreation and privacy have been transgressed. The Court finds these arguments "marginal and indirect at best." *Dandridge v. Williams,* 397 U.S. 471, 520–21, n. 14, 90 S.Ct. 1153, 1179–80, 25 L.Ed.2d 491, 522 (Marshall, J., dissenting); *see also Murrow v. Clifford,* 404 F.Supp. 999 (D.N.J. 1975).

Further, defendants' restrictive eligibility requirement, the plaintiffs argue, violates minimum standards of protection afforded by the Fourteenth Amendment.

█ Under traditional equal protection methodology, a legislative or regulatory classification scheme in the area of social welfare benefits will be sustained if the classification is reasonable, non-arbitrary and rationally related to some legitimate governmental interest. *Weinberger v. Salfi, supra* ; *United States Dep't of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The critical inquiry is whether the classification substantially furthers the purpose of the regulation or enactment in question. *United States Dep't of Agriculture v. Moreno, supra.*

Section 601 of Title 42, United States Code, sets forth the policy objectives of the A.F.D.C. program:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they

are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection · · ··

Plaintiffs contend the defendants' classification scheme does not further the broad policy objectives of the program. On the other hand, the defendants agree that the effect of their actions creates the classifications, but seek to justify their policy on three grounds. First, defendants state that pregnant women with no other children may find and maintain employment more easily than pregnant women with children in being. Secondly, the defendants contend that A.F.D.C. grants are geared toward certain "maintenance items," such as clothing and shelter, which are not adapted to a family with only an expected child. And, finally, defendants state other relief is generally available to women such as plaintiffs in the form of general assistance and maternity medical benefits.

██ It is evident to the Court that defendants' interpretation denying plaintiffs A.F.D.C. benefits does bear a rational relation to the program goals, and, therefore, does not violate plaintiffs' rights to equal protection of the law. The Court's reasoning is twofold. First, the policy objectives of the A.F.D.C. program as set forth in Section 601, *supra,* and its legislative history, do not require state programs to furnish maternal and prenatal benefits. *See Burns v. Alcala, supra,* 420 U.S. at 581–82, 95 S.Ct. at 1185, 43 L.Ed.2d at 475–76. Secondly, the Court believes that defendants may choose to pursue a legislative welfare scheme whereby maternal and prenatal needs are satisfied by programs other than the A.F.D.C. program. Thus, in Iowa, plaintiffs are ostensibly eligible for several state[6] and federal[7] programs

---

6. See Iowa Code, ch. 252 (1975), providing food, rent and medical benefits for indigent persons; and Iowa Code, ch. 255 (1975), providing medical and surgical treatment for indigent pregnant women.

7. As recognized by the Supreme Court in *Burns v. Alcala,* 420 U.S. 575, 583, 95 S.Ct. 1180, 1185, 43 L.Ed.2d 469, 477 (1975):

> Congress did not ignore the needs of pregnant women or the desirability of adequate

which provide monetary, food and medical benefits for needy pregnant applicants.

In determining that defendants' interpretation of the regulation does not violate plaintiffs' equal protection rights, the Court believes the holding " 'is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.' " *Weinberger v. Salfi, supra,* 422 U.S. at 770, 95 S.Ct. at 2469, 45 L.Ed.2d at 541, *quoting Dandridge v. Williams, supra,* 397 U.S. at 485–86, 90 S.Ct. at 1161–62, 25 L.Ed.2d at 501–03.

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted, and plaintiffs' motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiffs' cause of action is dismissed.

prenatal care. In Title V of the Social Security Act, now codified as 42 U.S.C. §§ 701–709 (1970 ed. and Supp. III), Congress provided federal funding for prenatal and postnatal health services to mothers and infants, explicitly designed to reduce infant and maternal mortality. (footnote omitted) Furthermore, plaintiffs may be eligible for food stamps under the Food Stamp Act of 1964, 7 U.S.C. § 2011 *et seq.,* as amended.